UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER M. LUCAS, | : | Case No. 1:14-cv-70 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| GREGG APPLIANCES, INC. *et al.*, | : | |
| | : | |
| Defendants. | : | |

**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL
DEPOSITION OF NON-PARTY WITNESS (Doc. 16)**

This civil action is before the Court on Defendants' Motion to Compel Deposition
of Non-Party Witness (Doc. 16) and the parties' responsive memoranda (Docs. 17, 24).

## I.      STATEMENT OF THE CASE

Plaintiff Christopher M. Lucas alleges that Defendants Gregg Appliances, Inc.
and Gregg Appliances, Inc., d.b.a. hhgregg, wrongfully terminated his employment in
violation of the Americans with Disabilities Act, 42 U.S.C. § 12112, and Ohio Rev. Code
§ 4112.02.  (Doc. 1).

Defendants' motion to compel the deposition of Steven Hoerst, Plaintiff's father-
in-law, stems from Plaintiff's own deposition testimony.  Plaintiff testified that Hoerst
was present during all of his meeting with counsel and that Plaintiff forwarded
documents received from his counsel to Hoerst, including a fee arrangement and progress
invoices.  (Doc. 19 at 17-18, 36-40).  However, throughout Plaintiff's deposition,
Plaintiff's counsel objected and repeatedly instructed Plaintiff not to answer questions

about why he forwarded the progress invoices to Hoerst and whether Hoerst was contributing to his legal fees.  (Doc. 20 at 149-55).  Based on this testimony, Defendants now seek to depose Hoerst regarding the conversations between Plaintiff and his counsel while Hoerst was present and the progress invoices forwarded to Hoerst.  Hoerst has retained separate counsel.

Plaintiff does not object to Defendants deposing Hoerst, but Plaintiff does seek to preclude certain lines of questioning.  Specifically, Plaintiff requests that the Court prohibit Defendants from inquiring as to conversations between Plaintiff and his counsel while Hoerst was present and asking about the documents that Plaintiff forwarded to Hoerst, including questions about whether anyone is paying legal bills on behalf of Plaintiff.  Plaintiff argues that this information is protected by the attorney-client privilege and the work product doctrine, is not relevant, and is precluded by a prior agreement between counsel.

## II.    RELEVANT LAW

### A.    Attorney-Client Privilege

The attorney-client privilege protects from disclosure "confidential communications between a lawyer and his client in matters that relate to the legal interests of society and the client."  *In re Grand Jury Subpoena*, 886 F.2d 135, 137 (6th

Cir. 1989) (internal quotation marks omitted).[1]   The Court of Appeals requires the

following elements for the privilege to apply: "(1) where legal advice of any kind is

sought (2) from a professional legal adviser in his capacity as such, (3) the communi-

cations relating to that purpose, (4) made in confidence (5) by the client, (6) are at his

instance permanently protected (7) from disclosure by himself or by the legal adviser,

(8) unless the protection is waived."  *Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir.

1998).  The burden of establishing the existence of the attorney-client privilege lies with

the person asserting it.  *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999).

   The purpose of the privilege is to "encourage full and frank communication

between attorneys and their clients and thereby promote broader public interests in the

observance of law and administration of justice."  *Upjohn Co. v. United States*, 449 U.S.

383, 389 (1981).  However, "the privilege is narrowly construed because it reduces the

amount of information discoverable during the course of a lawsuit."  *United States v.*

*Collis*, 128 F.3d 313, 320 (6th Cir. 1997).  For this reason, the attorney-client privilege

"applies only where necessary to achieve its purpose and protects only those

communications necessary to obtain legal advice."  *In re Antitrust Grand Jury*, 805 F.2d

155, 162 (6th Cir. 1986).

---

[1] The Court applies federal law regarding privilege because Plaintiff invokes federal question jurisdiction, notwithstanding his supplemental state law claim.  *Hancock v. Dodson*, 958 F.2d 1367, 1373 (6th Cir. 1992).  However, "[t]here is no material difference between Ohio's attorney-client privilege and the federal attorney-client privilege."  *MA Equip. Leasing I, L.L.C. v. Tilton*, 980 N.E.2d 1072, 1079-80 (Ohio App. 2012).  Federal law always governs the work product doctrine.  *In re Prof'ls Direct Ins. Co.*, 578 F.3d 432, 438 (6th Cir. 2009).

A third party's knowledge of the communications between an attorney and client can often preclude assertion of the privilege. Courts frequently find that a client voluntarily or implicitly waives the privilege through subsequent actions that are inconsistent with maintaining the confidential nature of the initial attorney-client communication. *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 294 (6th Cir. 2002). For example, courts are clear that a "client can waive the privilege by voluntarily disclosing his attorney's advice to a third party." *Collis*, 128 F.3d at 320. In addition, a "client may waive the privilege by conduct which implies a waiver of the privilege or a consent to disclosure," such as failing to timely assert the privilege to prevent disclosure. *Dakota*, 197 F.3d at 825-26. A waiver applies to all other communications on the same subject matter, limited only by notions of fairness. *In re Grand Jury Proceedings Oct. 12, 1995*, 78 F.3d 251, 255-56 (6th Cir. 1996). Separate from waiver, it is well established "that the attorney-client privilege will not shield from disclosure statements made by a client to his or her attorney in the presence of a third party." *Reed*, 134 F.3d at 358. Communications made in the presence of a third party not acting as an agent for the attorney or client are generally not made in confidence. *Id.*

## B. Work Product

"The work product doctrine is distinct from and broader than the attorney-client privilege." *In re Columbia*, 293 F.3d at 294. The work product doctrine "generally protects from disclosure documents prepared by or for an attorney in anticipation of litigation." *Reg'l Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 713 (6th Cir. 2006). The purpose of the doctrine is to allow an attorney to "assemble information, sift

what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947).

Courts differentiate between "fact" and "opinion" work product, with separate standards for compelling production. *In re Columbia*, 293 F.3d at 294. "Fact" work product consists of "written or oral information transmitted to the attorney and recorded as conveyed by the client." *Id.* In contrast, "opinion" work product is "any material reflecting the attorney's mental impressions, opinions, conclusions, judgments or legal theories." *In re Antitrust Grand Jury*, 805 F.2d at 163. A party may obtain "fact" work product if it demonstrates a substantial need for the information and that it is unable to obtain it elsewhere without undue hardship, whereas "opinion" work product is only discoverable based on waiver. *In re Columbia*, 293 F.3d at 294; Fed. R. Civ. P. 26(b)(3)(A).

Waiver of the work product doctrine is generally coextensive with waiver of the attorney-client privilege, with one exception based on the identity of the third party recipient. *In re Columbia*, 293 F.3d at 306 & n.28. To constitute a waiver of the work product doctrine, "the initial waiver must be to an 'adversary.'" *Id.* Accordingly, "while the mere showing of a voluntary disclosure to a third person will generally suffice to show waiver of the attorney-client privilege, it should not suffice in itself for waiver of the work product privilege." *Id.* at 304 (quoting *Permian Corp. v. United States*, 665 F.2d 1214, 1219 (D.C. Cir. 1981)).

### III.    ANALYSIS

Plaintiff concedes that Defendants may depose Hoerst, but seeks to preclude questioning about conversations in meetings between Plaintiff and counsel that Hoerst attended, as well as on matters related to the fee agreement and progress invoices forwarded to Hoerst.  In support, Plaintiff argues: (1) he did not waive the attorney-client privilege for the meetings Hoerst attended; (2) a prior agreement between counsel prohibits Defendants from requesting the progress invoices; and (3) the progress invoices and fee agreement are not relevant and are protected by the attorney-client privilege and work product doctrine.

#### A.    Communications in Meetings

Plaintiff appears to argue that under Ohio law he did not voluntarily waive the attorney-client privilege.  Although Ohio law does provide that testimony on cross-examination that reveals the contents of privileged communications is not voluntary and therefore cannot constitute a waiver, *Harpman v. Devine*, 10 N.E.2d 776 (Ohio 1937), this is inapposite for two reasons.  First, federal law governs because Plaintiff invokes a federal question.  *Hancock*, 958 F.2d at 1373.  Second, this does not address the thrust of Defendants' argument — that the attorney-client privilege never attached because the communications were made in the presence of a third party.  Plaintiff does not claim that Hoerst was necessary to facilitate the attorney-client relationship and the only explanation given at his deposition, but not in his brief, is that Hoerst attended to provide support.  (Doc. 20 at 149).

Plaintiff has not carried his burden of establishing that the privilege exists for communications with counsel made in the presence of Hoerst. *Dakota*, 197 F.3d at 825. Instead, the privilege never attached to these communications. *See Reed*, 134 F.3d at 358 (holding that because two individuals "participated in the meeting as third parties, the discussion was not held in confidence for purposes of the attorney-client privilege").[2] Moreover, Defendants seek to compel the testimony of the third party, not the client nor the attorney (having dropped the request to depose counsel). *Id.* at 356 (providing that privileged communications are only protected "from disclosure by himself or by the legal adviser"). Accordingly, Defendants may depose Hoerst regarding his recollection of the meetings he attended with Plaintiff and his counsel.

### B.    Fee Agreement and Progress Invoices

Plaintiff asserts that deposition testimony regarding the fee agreement and progress invoices forwarded to Hoerst is precluded by a prior agreement between counsel, is not relevant in a fee-shifting case, and is protected by the attorney-client privilege and work product doctrine. Plaintiff's counsel asserts in his affidavit that the progress invoices "contain itemized descriptions of legal work done on the case." (Doc. 18 at ¶ 11). Plaintiff's brief slightly elaborates, stating that the progress invoices contain specific descriptions of work done, the purpose of the work, the sources of information, and other allegedly protected material. (Doc. 17 at 9). However, Plaintiff provides no

---

[2] *Accord State v. Chapman*, No. 01AP-650, 2001 WL 1661949, at *3 (Ohio App. Dec. 31, 2001) ("It is well established that communications between an attorney and his client in the presence of a third person are not privileged.").

information regarding the content of the fee agreement and thus the Court cannot conclude that it the fee agreement is protected from production under either doctrine.

As an initial matter, the Court notes that the majority of Plaintiff's brief is devoted to the assertion that Defendants are not entitled to the production of these documents. However, Defendants' motion only seeks to compel the deposition of Hoerst so that they may question him regarding his personal knowledge of the documents. The motion does not seek production of the documents.

Plaintiff also submits that Defendants are attempting to breach an agreement counsel reached to resolve a discovery dispute. Plaintiff objected to Defendants' request for production of documents that sought production of the legal representation agreement and all documents reflecting hours worked. (Doc. 18 at ¶ 8). Plaintiff's counsel objected that this would require production of his progress invoices, which reflect legal work performed on behalf of Plaintiff. (*Id.* at ¶¶ 8, 11). Defendants agreed to accept a bi-monthly accounting of hours worked to resolve the dispute. (*Id.* at ¶¶ 9-10, Exs. C, D). In response, Defendants counter that the subsequent revelation that Plaintiff forwarded the documents to Hoerst renders the agreement unenforceable.

The Court is loath to intrude on an agreement that experienced counsel reached to informally resolve a discovery dispute. However, as discussed above, Defendants' motion seeks to compel the deposition of Hoerst. It does not seek to rescind the agreement and compel production of the documents. Accordingly, the Court concludes that the agreement does not preclude deposing Hoerst on matters related to his receipt of the documents.

Plaintiff also contends that the fee agreement and progress invoices are not relevant in an action governed by a fee-shifting statute. Unlike an action that seeks legal fees as damages, Plaintiff asserts that the amount of attorney's fees incurred pursuant to a fee agreement is irrelevant because the statute and case law standards only permit the recovery of reasonable attorney's fees guided by objective factors such as the lodestar calculation.

A plaintiff can recover reasonable attorney's fees under a fee shifting statute such as 42 U.S.C. § 2000e-5(k) even if the attorney did not charge a fee or if a third person paid the fees. *McDaniel v. Princeton City Sch. Dist. Bd. of Educ.*, 45 F. App'x 354, 359 (6th Cir. 2002) (citing *Blanchard v. Bergeron*, 489 U.S. 87 (1989)). However, the Supreme Court has held that "the presence of a pre-existing fee agreement may aid in determining reasonableness," *Blanchard*, 489 U.S. at 93, and that a "request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

The scope of discovery is broad and encompasses information "reasonably calculated to lead to the discovery of admissible evidence." *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998); Fed. R. Civ. P. 26(b). Defendants contend that questioning Hoerst about his personal knowledge of the fee agreement and progress invoices is directly relevant to Plaintiff's employment discrimination claim and his potential damages. Further, Defendants argue that it may provide evidence relevant to Plaintiff's credibility and motive. Given the broad scope of discovery, the Court is unable to conclude that Hoerst's potential deposition testimony is not relevant.

Plaintiff also argues that the fee agreement and progress invoices are protected by the attorney-client privilege and work product doctrine. "In discovery disputes, a blanket assertion of privilege regarding attorney fee bills is typically not appropriate." *Penn, LLC v. Prosper Bus. Dev. Corp.*, No. 2:10-cv-993, 2012 WL 3583258, at *14 (S.D. Ohio Aug. 20, 2012). Further, "the amount of money paid or owed to an attorney by his client is generally not within the attorney-client privilege." *United States v. Haddad*, 527 F.3d 537, 538 (6th Cir. 1975). Even if these documents contained information protected by the attorney-client privilege, Plaintiff waived this privilege by forwarding them to Hoerst. However, this does not result in a waiver of the work product doctrine because Hoerst is not an adversary. *In re Columbia*, 293 F.3d at 306 & n.28.

In determining whether the documents contain information protected by the work product doctrine, the Court is substantially hindered by the vague description of their contents. *Little Hocking Water Ass'n, Inc. v. E.I. Du Pont De Nemours & Co.*, No. 2:09-cv-1081, 2013 WL 607969, at *17 (S.D. Ohio Feb. 19, 2013) (observing that "it is impossible to determine from Little Hocking's conclusory descriptions — often simply 'Invoice for attorneys' fees'— whether the attorney invoices capture privileged or product protected information"). However, Plaintiff's counsel does provide the requisite minimal basis for the Court to conclude that the progress invoices may contain some "opinion" work product, such as litigation strategy, specific descriptions of research and sources consulted, and counsel's mental impressions. *Id.* (citing *Chaudry v. Gallerizzo*, 174 F.3d 394 (4th Cir. 1999)). Although Defendants do not seek production of the progress invoices from Plaintiff, they should not be able circumvent the work product

doctrine and indirectly obtain this information by deposing Hoerst.  *United States v. One Tract of Real Prop. Together With all Bldgs., Improvements, Appurtenances & Fixtures*, 95 F.3d 422, 428 n.10 (6th Cir. 1996) ("[T]he Supreme Court in *Hickman* made clear that disclosure of the opinions or mental processes of counsel may occur when nontangible work product is sought through depositions, interrogatories, and requests for admissions.").

Accordingly, the Court concludes that it is proper to preclude Defendants from deposing Hoerst only as to matters that would require him to reveal portions of the fee agreement and progress invoices that qualify as "opinion" work product.  Specifically, Defendants may not inquire as to whether the documents contained information such as counsel's litigation strategy, specific descriptions of research and sources consulted, and mental impressions.

## IV.    CONCLUSION

For these reasons, Defendants' Motion to Compel Deposition of Non-Party Witness (Doc. 16) is **GRANTED**.  Defendants may depose Hoerst subject only to a prohibition on questions about "opinion" work product in the fee agreement and progress invoices.  Defendants, in consultation with counsel for Plaintiff and Hoerst, shall endeavor to schedule the deposition before the December 15, 2014 deposition deadline.

**IT IS SO ORDERED.**

Date:  12/5/14                                          *s/ Timothy S. Black*
                                                        Timothy S. Black
                                                        United States District Judge